***********
Having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. Fireman's Fund Insurance Company was the carrier on the risk at all times relevant herein.
4. The parties stipulated that plaintiff's average weekly wage was $575.00, yielding a compensation rate of $383.35.
5. The parties stipulated that on August 18, 1997, plaintiff sustained an injury by accident arising out of the course of his employment with the defendant-employer.
6. The parties stipulated that plaintiff has received temporary total disability compensation from August 18, 1997, through the date of the deputy commissioner's evidentiary hearing.
7. An Industrial Commission Form 24 Application to Terminate or Suspend Payment of Compensation was denied on February 23, 2000.
8. The parties stipulated to all Industrial Commission Forms.
9. The parties stipulated to the plaintiff's medical records from Charlotte Orthopedic Specialists, Miller Orthopaedic Clinic, Presbyterian Orthopaedic Hospital, Presbyterian Rehabilitation Center, Pain and Orthopedic Neurology, P.A., Mid-Atlantic Center for Pain Medicine, Neurology Medical Rehabilitation, Rehability Spine Center, Open MRI of Charlotte, Inc., GENEX Services, Inc., Mecklenburg Neurological Associates, P.A., The Rehab Center, George Moore Associates, Inc., Fireman's Fund, and First Charlotte Physicians.
10. The issues presented are:
 a) Whether the plaintiff's injuries of June 14, 1999, and October 21, 1999, are causally related to his compensable injury of August 16 [sic], 1997?
 b) Whether the plaintiff has reached maximum medical improvement from his compensable injury on August 16 [sic], 1997, and should his benefits be terminated?
 c) What compensation, if any, is plaintiff entitled under the North Carolina Workers' Compensation Act?
 d) Whether defendants are entitled to credit for compensation benefits previously paid to plaintiff after he reached maximum medical improvement from his compensable injury?
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. At the time of the evidentiary hearing, plaintiff was 58 years old.
2. On August 18, 1997, plaintiff injured his back while working for defendant-employer. Defendants accepted plaintiff's claim as a compensable claim. Plaintiff eventually presented to Dr. Aristides Chaconas, who became plaintiff's treating physician and diagnosed plaintiff with a back strain which developed into myofascial syndrome.
3. On June 14, 1999, plaintiff tripped on a riser as he was exiting a cafeteria. As a result, plaintiff sustained a fracture of his left ankle.
4. On October 21, 1999, plaintiff was involved in an automobile accident when the vehicle he was driving crossed the centerline and collided head-on with another vehicle. As a result of this accident, plaintiff sustained a fracture of his right ankle.
5. Since the date of plaintiff's compensable back injury by accident, plaintiff has been treated by Dr. Bruce Darden, orthopaedist; Dr. Robert Giedraitis, physiatrist; Dr. Anthony Wheeler, neurologist and pain medicine specialist; Dr. Ronald Demas, neurologist; Dr. Aristides Chaconas, neurologists; Dr. Gerald Aronoff, pain medicine specialist; Dr. Kern Carlton, physical medicine rehabilitation and pain medicine specialist; Dr. George Dornblazer, psychiatrist; and Dr. William Griffin, orthopaedist.
6. Plaintiff was seen by Dr. Darden in 1994 for complaints of pain in his cervical spine. Dr. Darden performed a microscopic anterior cervical fusion at C6-7 and C7-T1. Plaintiff recovered from his cervical fusion and had been doing well until August 1997.
7. In December 1997, Dr. Giedraitis diagnosed plaintiff with low back pain with normal imaging studies and normal EMG/nerve conduction studies. Dr. Giedraitis indicated that plaintiff had 0% impairment of the lumbar spine and he referred plaintiff back to Dr. Darden for treatment of preexisting cervical complaints.
8. When plaintiff presented to Dr. Darden in 1997, he was treated for a lumbosacral and cervical strain. Plaintiff was treated conservatively and he was referred to Dr. Anthony Wheeler for further treatment.
9. Plaintiff presented to Dr. Wheeler in May 1998. Dr. Wheeler diagnosed cervical discogenic syndrome, cervical thoracic segmental and soft tissue dysfunctions, and probable lumbar discogenic syndrome. Dr. Wheeler recommended a multi-disciplinary program at the Presbyterian Center for Pain Medicine.
10. Plaintiff was treated at the Presbyterian Center for Pain Medicine in June 1998. Plaintiff failed to complete the treatment and did not explain his absence. Dr. Wheeler then released plaintiff to full-time, sedentary-light work. Dr. Wheeler opined that plaintiff retained a 5% permanent partial impairment to the back.
11. In July 1998, plaintiff presented to Dr. Aristides Chaconas. Dr. Chaconas diagnosed plaintiff with myofascial pain syndrome. In addition, Dr. Chaconas diagnosed paroxysmal sensory disturbance of unclear etiology. Dr. Chaconas embarked on a course of treatment including Tylox for pain control.
12. On October 5, 1999, plaintiff presented to Dr. Aronoff on referral by Dr. Chaconas. Dr. Aronoff diagnosed chronic pain syndrome with associated pain behavior. He recommended a pain rehabilitation program geared towards functional restoration, pharmacologic re-evaluation, as well as cognitive and behavioral techniques.
13. On November 15, 1999, plaintiff presented to Dr. Kern Carlton at The Rehab Center in Charlotte. Dr. Carlton found that plaintiff was an appropriate candidate for a comprehensive interdisciplinary pain management and rehabilitation program. However, Dr. Carlton indicated that plaintiff would need to return to weight bearing status with regard to his right ankle before he could start a rehabilitation program.
14. On December 9, 1999, plaintiff presented to Dr. Craig Brigham, orthopaedist, for an independent medical examination. Dr. Brigham indicated that plaintiff suffered from a lumbar sprain, which had caused a bizarre symptom complex and created disability far out of proportion to objective findings. Dr. Brigham opined that plaintiff had reached maximum medical improvement. Dr. Brigham did not have any objective basis to conclude that plaintiff could not work. Dr. Brigham also opined that further treatment would be of no benefit to plaintiff.
15. On March 2, 2000, plaintiff began a comprehensive rehabilitation program at The Rehab Center.
16. On April 5, 2000, plaintiff completed the rehabilitation program at The Rehab Center. During the course of treatment, plaintiff put forth good effort and made substantial progress in his strength, range-of-motion and flexibility. Plaintiff reported he was very pleased with his progress. There were no syncopal episodes during his course of treatment. During the treatment, plaintiff was tapered off narcotic medications. A functional status report indicated that plaintiff could lift up to 25 pounds occasionally and he was advised to find work within those restrictions. Dr. Carlton opined that plaintiff was at maximum medical improvement.
17. Plaintiff had a history of bipolar disorder and depression for which he received psychiatric treatment from Dr. George Dornblazer from 1992 through 1997.
18. On August 21, 2000, plaintiff presented to Dr. Demas for an Independent Medical Evaluation per Ann McKennes, a rehabilitation nurse from GENEX. Dr. Demas examined plaintiff and opined that there was a direct relationship between plaintiff's original back injury and his subsequent left and right ankle fractures, and that those fractures would not have occurred absent the back injury and on-going back problem. Dr. Demas also opined that plaintiff had reached maximum medical improvement and assigned a permanent partial impairment rating of 25% to plaintiff's back. Dr. Demas further opined that plaintiff is able to return to work with specific restrictions.
19. Dr. Chaconas opined that plaintiff's compensable back injury and subsequently developing myofascial pain were the cause of plaintiff's severe exacerbations of pain accompanied by dizziness that is best explained on the basis of a presyncopable vasovagal cause and which ultimately led to the ankle fractures. Dr. Chaconas believed that plaintiff cannot return to work due to the chronic nature of his pain.
20. Drs. Wheeler and Brigham noted that plaintiff had reported dizziness, headaches and lightheadedness as much as five years prior to his back injury. Drs. Demas, Carlton, Wheeler, Brigham and Giedraitis opined that plaintiff had reached maximum medical improvement, with Drs. Brigham and Giedraitis assigning plaintiff a permanent partial impairment rating to his back of 0% and Dr. Wheeler assigning a rating of 5% to plaintiff's back. Furthermore, Dr. Brigham and Dr. Griffin opined that plaintiff's original compensable injury by accident was not causally related to plaintiff's right and left ankle fractures. Dr. Dornblazer opined that during his visits with plaintiff, plaintiff had never reported a back injury.
21. Dr. Griffin further opined that plaintiff had reached maximum medical improvement as to his fractured ankles and assigned no permanent partial impairment rating to either of plaintiff's legs.
22. Notwithstanding that Dr. Chaconas was plaintiff's treating physician, plaintiff also was treated by numerous other physicians for lengthy periods of time. These other physicians had diagnoses and opinions different from those of Dr. Chaconas. Drs. Griffin and Brigham, orthopaedists, disagree with neurologists Drs. Chaconas and Demas regarding the causal relationship between plaintiff's original compensable injury by accident and his subsequent left and right ankle fractures. Moreover, Drs. Wheeler, Brigham, Demas, Carlton and Giedraitis opine that plaintiff is able to return to work with restrictions.
23. The Commission gives greater weight to the opinions of Drs. Griffin and Brigham, as orthopaedists, than to Drs. Chaconas and Demas, as neurologists, regarding the cause of plaintiff's ankle fractures. The Commission gives greater weight to the five doctors' testimony, Drs. Wheeler, Brigham, Demas, Carlton and Giedraitis over Dr. Chaconas' testimony regarding plaintiff's ability to return to work with restrictions. Regarding the doctors who rated plaintiff's back, the Commission gives greater weight to Dr. Wheeler's opinion regarding plaintiff's permanent partial impairment rating over Dr. Demas' rating to plaintiff's back, because Dr. Wheeler's rating of 5% to the back is more in line with the ratings assigned by Drs. Brigham and Giedraits of 0% than Dr. Demas' rating of 25% to the back.
24. At the hearing before the Full Commission, counsel for plaintiff argued that Dr. Griffin's refusal to answer counsel's hypothetical question should not be interpreted as an opinion by the doctor that the ankle injuries were not related to plaintiff's compensable back injury. Having reviewed all of the evidence in the record, particularly the deposition testimony of Dr. Griffin and his medical records, the Commission finds that Dr. Griffin refused to answer counsel's hypothetical question because the "facts" proposed in the hypothetical were contrary to the information contained in Dr. Griffin's records and known by Dr. Griffin. Contrary to counsel's argument, Dr. Griffin did not refuse to answer the questions concerning causation; rather he testified that he had no history from plaintiff about back problems which led to the left ankle injury. Rather, Dr. Griffin testified that the history was that plaintiff tripped on a riser in a restaurant and that incident led to his left ankle fracture. Dr. Griffin further testified that the right ankle injury was caused by an automobile accident. In the course of treating plaintiff, Dr. Griffin never received any information to suggest that plaintiff was having back pain or other sequella from his back injury that contributed to these incidents. As counsel may not create "evidence" by asking hypothetical questions which are unsupported by the facts, and as the Commission must separate hypothetical cause from actual cause based on competent evidence of record, Dr. Griffin appropriately refused to accept hypothetical facts when the evidence known to him was to the contrary. For these reasons, as well as others stated herein, the Commission finds that the greater weight of the competent evidence is that the two separate incidents which led to plaintiff's ankle fractures are not related to or caused by plaintiff's compensable back injury.
25. At the evidentiary hearing, plaintiff testified that he was previously involved in the retail shoe business and that he owned and managed a number of retail shoe stores throughout the Southeast during the 1970's and 1980's.
26. Plaintiff also testified at the evidentiary hearing that, although he has not returned to work for the defendant-employer, he has been involved in a number of businesses since August 18, 1997, and that he has assisted his sons in setting up new businesses in North Carolina and South Carolina. Plaintiff also testified regarding his own business acumen and prior self-employment.
27. The competent evidence in the record establishes that as of August 21, 2000, plaintiff reached maximum medical improvement for his compensable back injury of August 18, 1997, and that his bilateral ankle fractures were not caused by his compensable back injury of August 18, 1997.
28. The competent evidence in the record fails to establish that plaintiff earned any wages or income after his compensable injury by accident even though plaintiff occasionally participated in various business ventures. The competent evidence in the record, however, does establish that plaintiff has business acumen for which he can earn wages, notwithstanding his prior injury by accident or the resulting medical restrictions.
29. The competent evidence in the record is insufficient to establish that plaintiff made reasonable efforts to return to work. Plaintiff retains wage-earning capacity.
30. The defendants are entitled to a credit, if any, for the payment of benefits paid to plaintiff after reaching maximum medical improvement on August 21, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury to his back arising out of the course of his employment with defendant and as a direct result of a specific traumatic incident of the work assigned on August 18, 1997. G.S. § 97-2(6).
2. Plaintiff's bilateral ankle fractures were neither caused by nor resulted from his compensable back injury by accident of August 18, 1997. G.S. § 97-2(6).
3. Plaintiff has reached maximum medical improvement from his compensable injury by accident as of August 21, 2000. G.S. §§ 97-2(19),97-25.
4. Plaintiff is entitled to have the defendants pay for all his medical expenses incurred as a result of his compensable back injury by accident of August 18, 1997, but excluding medical expenses incurred for the treatment of the plaintiff's bilateral ankle fractures, as they did not result from his compensable back injury by accident. G.S. §§97-2(19), 97-25.
5. Plaintiff is entitled to 15 weeks of permanent partial impairment compensation for the 5% permanent partial impairment rating to his back due to his compensable injury by accident of August 18, 1997, subject to an offset, if any, for the payment of total disability benefits paid to plaintiff after he reached maximum medical improvement on August 21, 2000. G.S. § 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to the attorney fee approved herein, and subject to an offset for total disability benefits paid to plaintiff for the period after August 21, 2000, defendant shall pay plaintiff 15 weeks of permanent partial impairment compensation for the 5% permanent partial impairment rating to plaintiff's back.
2. Plaintiff's claim for compensation for his ankle injuries is DENIED.
3. Defendants shall pay for plaintiff's medical expenses incurred as a result of his compensable back injury of August 18, 1997, excluding medical expenses incurred for the treatment of the plaintiff's bilateral ankle fractures.
4. A reasonable attorney fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel.
5. Defendants are entitled to a credit for temporary total benefits paid to the plaintiff after August 21, 2000, the date of maximum medical improvement.
6. The defendants shall bear the costs, including expert witness fees in the amount of $360.00 to Dr. Carlton, $360.00 to Dr. Aronoff, $795.00 to Dr. Wheeler, $470.00 to Dr. Brigham, $235.00 to Dr. Darden, $310.00 to Dr. Giedraitis, and $360.00 to Dr. Dornblazer.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING WITHOUT A WRITTEN OPINION:
 S/_____________ THOMAS J. BOLCH COMMISSIONER